IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| TAMEY R. MARRS, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 4:20-cv-00822-BP |
| § | |
| COMMISSIONER OF SOCIAL § | |
| SECURITY, § | |
| § | |
| Defendant. § | |
| § | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Tamey Rene Marrs ("Marrs") filed this action under 42 U.S.C. § 405(g), seeking judicial review of the denial by the Commissioner of Social Security ("Commissioner") of her application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act ("SSA"). ECF No. 1. After considering the pleadings, briefs, and administrative record, the undersigned **AFFIRMS** the Commissioner's decision.

**I.   STATEMENT OF THE CASE**

This case arises from the rejection of two benefits claims Marrs filed in 2017, a Title II DIB application filed on March 21, 2017, and a Title XVI SSI application filed on October 26, 2017. ECF No. 21-1 at 186. Marrs's applications explained that she suffered from seizures, chronic back pain, anxiety, and hypertension, which precluded her from substantial gainful activity. *Id.* at 334. Administrative Law Judge ("ALJ") Derek Phillips conducted a hearing on her claims on August 23, 2018. *Id.* at 186–87. The ALJ interpreted Marrs's alleged disability onset date of October 31, 2016 as "an implied request to reopen and revise [her prior] Title II only claim that

was initially filed on November 5, 2014, and denied on April 16, 2015." *Id.* The ALJ issued a partially favorable decision, finding Marrs disabled under the SSA since November 24, 2016, but declining to declare her disabled before that date and thus undermine the prior ALJ's determination. *Id.*

By Order dated July 22, 2019, the Appeals Council ("AC") remanded the case, finding that "further proceedings are needed in this case because the . . . residual functional capacity finding, particularly the finding that in addition to normal breaks the claimant would be off-task 10% of the time, is not substantially supported by the current evidentiary record." *Id.* at 24, 201–202. The remand order directed the ALJ to:

> update the medical evidence of record; obtain physical and psychological consultative examinations with testing; consider the need to obtain testimony from a medical expert; give further consideration to the claimant's maximum RFC with references to evidence of record in support of the assessed limitations; and consider expanding the record with supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base.

*Id.* at 21. On remand, the ALJ revisited the evidence of record to determine if the prior determination of Marrs's residual functional capacity ("RFC") was an accurate reflection of her ability to participate in meaningful work opportunities. *Id.* at 17; ECF No. 26 at 5. Based on his review, the ALJ determined that it was not, primarily because "the claimant's statements concerning the intensity, persistence, and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record." *Id.* at 29. The ALJ issued an unfavorable decision on January 16, 2020, finding that Marrs was not disabled under the meaning of the SSA. *Id.*

The ALJ employed the statutory five-step analysis and found at step one that Marrs had not engaged in substantial gainful activity since October 31, 2016. ECF No. 21-1 at 23. At step two, the ALJ determined that Marrs had the severe impairments of degenerative disc disease, post-

laminectomy syndrome, chronic pain syndrome, and obesity. *Id.* At step three, the ALJ held that these impairments did not meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, App. 1. *Id.* at 25–26. The ALJ concluded that Marrs retained the RFC to:

> lift, carry, push, and/or pull 20 pounds occasionally and 10 pounds frequently. In an 8-hour workday, she can sit, stand, and/or walk for 6 hours. [She] can frequently operate foot controls bilaterally [and] occasionally climb ladders, ropes, or scaffolds, balance, crawl, crouch, or stoop, while she can frequently kneel and climb ramps or stairs. [She] is able to understand simple oral instructions [and] can have occasional exposures to unprotected heights, moving mechanical parts, operating a motor vehicle, extreme cold, and vibration . . . [she] could be expected to be off task 5% of the time in addition to usual work breaks [in] an 8-hour workday.

*Id.* at 26. The ALJ determined at step four that Marrs was incapable of performing past relevant work. *Id.* at 31. However, the ALJ concluded at step five that "[c]onsidering the claimant's age, education, work experience, and RFC, jobs exist in significant numbers in the national economy that the claimant can perform." *Id.* at 31.

By way of example, the ALJ referenced packers (approximately 80,000 jobs in Texas; 800,000 nationally); assembly workers (approximately 52,000 jobs in Texas; 520,000 nationally); and wire sorters (approximately 65,000 jobs in Texas; 650,000 nationally). *Id.* at 32. Based upon vocational expert testimony, the ALJ emphasized that the articulated jobs were non-exhaustive and explained that Marrs would be capable of "making a successful adjustment" to numerous similar jobs in the national economy. *Id.*

On June 3, 2020, the AC denied review, making the ALJ's unfavorable ruling the Commissioner's final decision. *Id.* at 32; ECF No. 27 at 6. Thus, Marrs's case is properly before the Court for review. *Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) ("[T]he Commissioner's 'final decision' includes the Appeals Council's denial of [a claimant's] request for review.").

## II.     FACTUAL BACKGROUND

Marrs was forty-five when her alleged disabilities began and forty-eight when the Commissioner issued the decision presently before the Court for review. ECF Nos. 21-1 at 126; 27 at 6. She has at least a high school education and prior work experience as a kitchen worker. *Id.* She has been treated for both physical and psychological impairments, several of which were the subject of the denied DIB and SSI applications currently before the Court. ECF No. 27 at 6–12.

## III.    STANDARD OF REVIEW

Title II, 42 U.S.C. § 404 *et seq.*, of the SSA governs the disability insurance program. *See* 20 C.F.R. Pt. 404. The SSA defines a disability as a "medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months" that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. § 423(d); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999).

To determine whether a claimant is disabled and thus entitled to disability benefits, the Commissioner employs a sequential five-step analysis. 20 C.F.R. § 404.1520. First, the claimant must not be presently working at any substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial gainful activity" means work activity involving the use of significant physical or mental abilities for pay or profit. *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002); 20 C.F.R. § 404.1527. Second, the claimant must have a severe impairment or combination of impairments. 20 C.F.R. § 404.1520(c); *see Stone v. Heckler*, 752 F.2d 1099, 1100–03 (5th Cir. 1985). Third, disability exists if the impairment or combination of impairments meets or equals an impairment listed in the SSA's statutory list. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1; 20 C.F.R. § 404.1520(d). Fourth, if the claimant's medical status alone does not constitute a disability, the

impairment or impairments must prevent the claimant from returning to her past relevant work. 20 C.F.R. § 404.1520(e). Fifth, the impairment must prevent the claimant from doing any work, considering the claimant's RFC, age, education, and past work experience. *Crowley v. Apfel*, 197 F.3d 197, 197-98 (5th Cir. 1999); 20 C.F.R. § 404.1520(f). "The claimant bears the burden of showing that she is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). Before proceeding to steps four and five, the Commissioner must assess a claimant's RFC—"the most [a claimant] can still do despite [her] physical and mental limitations." *Perez v. Barnhart*, 415 F.3d 457, 462 (5th Cir. 2005); 20 C.F.R. § 416.945(a)(1).

Judicial review is limited to a determination of whether the Commissioner applied correct legal standards and whether substantial evidence in the record supports their decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). "Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). "It is more than a mere scintilla and less than a preponderance." *Id.* "A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Id.* The Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but it will carefully scrutinize the record to determine if evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383. "Conflicts in the evidence are for the Commissioner and not the courts to resolve." *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999) (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)).

"The Appointments Clause of the Constitution lays out the permissible methods of appointing 'Officers of the United States,' a class of government officials distinct from mere employees." *Lucia v. SEC*, 585 U.S. ___, ___ 138 S. Ct. 2044, 2050 (2018) (citing U.S. CONST. art. II, § 2, cl. 2). Under the Appointments Clause, only the President, "Courts of Law," or "Heads of Departments" may appoint such officers. U.S. CONST. art. II, § 2, cl. 2. ALJs are "Officers of the United States" within the meaning of the Appointments Clause. *Lucia*, 585 U.S. at ___, 138 S. Ct. at 2055. Affected persons may challenge any decisions reached by ALJs not constitutionally appointed at the time of the decision, and they do not forfeit Appointments Clause challenges by failing to raise them before the agency and presenting them for the first time before a federal court. *Carr v. Saul*, 593 U.S. ___, ___,141 S. Ct. 1352, 1362 (2021).

**IV.   ANALYSIS**

Marrs raises two issues on appeal, arguing (1) that substantial evidence did not support the ALJ's RFC determination because the ALJ failed to properly consider Dr. Flavill's opinion; and (2) that the ALJ was unconstitutionally appointed when he presided over her case. *See* ECF No. 27 at 11, 19. For issue one, the Court may neither reweigh the evidence nor second guess the Commissioner's evaluation, but may only examine the record to see if substantial evidence supports the ALJ's conclusion. *Harris*, 209 F.3d at 417; *Hollis*, 837 F.2d at 1383. Accordingly, the Court can ask two questions regarding the ALJ's handling of medical opinion evidence: (1) were correct legal standards applied when reviewing the opinions; and (2) does substantial evidence support the conclusion that Marrs was not disabled, despite Dr. Flavill's opinion to the contrary.

Issue two concerns the constitutionality of the ALJ's appointment considering the Supreme Court's decision in *Lucia*. Because an unconstitutionally appointed ALJ would have no authority

to hear Marrs's claim in the first place, the Court must consider this issue before addressing Marrs's argument in issue one. *See* SSR 19-1p, 84 Fed. Reg. 9582, 9582 (2019) ("Challenges to an ALJ's authority to decide a claim may raise a broadly applicable procedural issue independent of the merits of the individual claim for benefits—that is, whether the ALJ who presided over the claimant's hearing was properly appointed under the Appointments Clause of the Constitution.").

### A.     The ALJ was not unconstitutionally appointed at the time of Marrs's hearing.

Marrs contends that "ALJ Phillips was unconstitutionally appointed at the time of his first adjudication of this matter, and should be barred from further adjudication of the same issue pursuant to *Lucia v. SEC*." ECF No. 27 at 19. In *Lucia*, the Supreme Court reversed and remanded the decision of a Securities and Exchange Commission ALJ who was appointed in violation of the Appointments Clause. *See Lucia*, 585 U.S. at ____, 138 S. Ct. at 2044–55. Although *Lucia* may control the disposition of certain Social Security disability appeals, it does not here because ALJ Phillips was not unconstitutionally appointed when he heard Marrs's case.

In the wake of *Lucia*, the Social Security Administration and other federal agencies scrambled to address the appointments of their ALJs to cure any deficiencies under the Appointments Clause. On July 16, 2018, the Commissioner preemptively "address[ed] any Appointments Clause questions involving Social Security claims" by ratify[ing] the appointments" of all SSA ALJs and "approv[ing] those appointments as her own." SSR 19-1p, 84 Fed. Reg. 9582, 9583 (2019). Because the Commissioner ratified ALJ Phillips's appointment on July 16, 2018, and Phillips first heard Marrs's claim on August 23, 2018 and later on November 25, 2019 following remand from the AC, he was constitutionally appointed when he heard her case. ECF No. 21-1 at 20, 21, 51, 95, 131, 323. Thus, his involvement with the present matter did not offend the

Appointments Clause, nor any other provision of the Constitution, and Marrs's arguments to the contrary are not persuasive.

> B. **The ALJ applied correct legal standards when evaluating Dr. Flavill's opinion and the evidentiary record as a whole.**

Marrs contends that "[t]he ALJ's RFC determination is unsupported by substantial evidence because he failed to properly weigh the opinions of treating physician Paul Flavill, Ph.D., M.D." ECF No. 27 at 14. But RFC determinations are administrative assessments based upon the totality of the evidence. 20 C.F.R. § 404.1545. In conducting the RFC analysis, the Commissioner examines the whole record to determine the extent to which a claimant's alleged impairments prevent participation in meaningful work activities. *Id.* Although afforded great weight, medical opinions furnished by a claimant's physician are but one piece of a larger evidentiary puzzle. Thus, the fact that the ALJ interpreted Dr. Flavill's medical opinion differently than Marrs would have liked does not mean that substantial evidence did not support the RFC.

The Court's task is not to scrutinize the Commissioner's findings nor evaluate their persuasiveness, but simply to ask if the ALJ employed correct legal standards to reach them. *Harris*, 209 F.3d at 417; *Hollis*, 837 F.2d at 1383. However adamantly Marrs disagrees with the Commissioner's findings, she has not shown they resulted from the ALJ's deviation from the applicable legal standards. An ALJ may discount a medical opinion, in whole or in part, for good cause. 20 C.F.R. § 404.1520(c)(b)(2); *Newton v. Apfel*, 209 F.3d 448, 455–456 (5th Cir. 2000). Here, the ALJ explained that:

> I give limited weight to Dr. Flavill's opinions on the claimant's physical RFC because there seems to be no relation between the functional limitations identified and the treatment notes on which they are based. With what I have been able to glean from Dr. Flavill's largely illegible hand-written treatment notes, it appears much of his office time with the claimant centered on . . . her insomnia. I recognized nothing in the notes that could be said to support the types of physical restrictions he described in Exhibit B5F. For similar reasons, I give little weight to the opinions

> Dr. Flavill expressed regarding seizure-related matters in Exhibit BF7. The seizure frequency he described in that form seems appreciably higher than what he documented in treatment notes with the claimant [and] . . . is also inconsistent with what the claimant related in her seizure questionnaire at Exhibit B8E. These inconsistencies undermine the probative value of Dr. Flavill's assessments.

ECF No. 21-2 at 30–31. Such a clear explanation satisfies the "good cause" requirement for an ALJ to discount medical opinions. *See Newton*, 209 F.3d at 456. Considering his reasoned approach to the conflicting medical opinions in the record, the ALJ's refusal to accord controlling weight to Dr. Flavill's opinion did not amount to a deviation from the germane legal standards. The Commissioner's decision arose from the standard five-step analysis, was based upon the ALJ's consideration of the whole evidentiary record, and was adequately explained at each step. Thus, it was the product of correct legal standards and should be affirmed accordingly.

      **C.**      **Substantial evidence supports the ALJ's RFC determination.**

An RFC determination is valid if supported by substantial evidence, which is "more than a mere scintilla and less than a preponderance." *Boyd*, 239 F.3d at 704. Because "[a] finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision," the Court must look to the presence of credible evidentiary choices and medical findings at each stage of the ALJ's analysis. *Id.* Here, Marrs does not dispute the evidence weighing against her, but argues only that the ALJ's consideration of Dr. Flavill's opinion was insufficient. ECF No. 27 at 14–18. However, the Court's role is not to second guess the ALJ's analysis, but to ensure that substantial evidence supports his decision.

In assessing Marrs's work-related capabilities, the ALJ noted that she could "do laundry, sweep, and mop." *Id.* at 24, 27, 112. In addition, the ALJ observed from her testimony that "she is able to sit up to 30 minutes at a time, stand for 5 minutes at a time, and lift up to 10 pounds," that she "requires no assistive device to ambulate[,]" and "is able to perform all her own personal care

independently." *Id.* By explaining his analysis at every step, the ALJ demonstrated that substantial evidence supported his decision. The nature of Marrs's ongoing activities during the relevant timeframe support the ALJ's determination that, though perhaps disadvantaged by her ailments, she was not disabled as understood by the SSA.

The ALJ considered Dr. Flavill's opinion and balanced its relative persuasiveness against other evidence in the record. This holistic approach ensures no single piece of evidence controls over and against the rest of the evidentiary record and aligns with the approach outlined in 20 C.F.R. § 404.1520(c). Throughout the ten pages of his Findings of Fact & Conclusions of Law, the ALJ consistently communicated the evidence presented, his interpretation of that evidence, and his analysis of Marrs's claim in light of that evidence. *See* ECF No. 21-1 at 23–33. After considering the entire evidentiary record, including Dr. Flavill's opinion, the ALJ noted that:

> Physically, in combination with her nearly unrestricted activities of daily living, it appears the claimant's conditions are not nearly as incapacitating as she complains. By all indications, it seems that the claimant's conditions are well-controlled with prescribed pain medications. While the claimant's musculoskeletal troubles are appreciable, their documentation did not indicate such severity as to preclude work. Although I understand the reflective/refractive synergistic effects of her several conditions, she has no formal somatic-related diagnoses (recall that Dr. Rattan allowed no more than a provisional diagnosis of this sort). Ultimately, I am left with evidence preponderating toward the conclusion that, while the claimant has mentally and physically challenging conditions, they are not so debilitating as to forestall competitive employment.

*Id.* at 29. Such a robustly explained conclusion does not lack substantial evidence merely because one evidentiary source, Dr. Flavill's opinion, disagreed. Moreover, because "[c]onflicts in the evidence are for the Commissioner and not the courts to resolve," the Court will not second guess the ALJ's determination that certain evidence in the record was more persuasive than Dr. Flavill's opinion. *See Brown*, 192 F.3d at 496. Considering the clarity of the ALJ's explanation and the degree to which the evidentiary record supports his findings, the undersigned concludes that

substantial evidence forms the basis of his conclusion, and the Court should affirm the Commissioner's decision accordingly.

## V. CONCLUSION

The ALJ applied correct legal standards, and substantial evidence in the record supports his determination that Marrs is not disabled under the SSA. Accordingly, the Commissioner's decision is **AFFIRMED**.

It is so **ORDERED** on October 5, 2021.

Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE